UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BUA INTERNATIONAL LIMITED, a Nigeria limited liability company; and NOM (UK) LTD, an England limited liability company<br><br>Petitioners,<br><br>v.<br><br>DOMTEC INTERNATIONAL LLC, an Idaho limited liability corporation<br><br>Respondent. | Case No. 4:23-cv-00206-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are a Motion for Award of Attorney's Fees (Dkt. 15) (the "Motion") and an Emergency Motion and Application for Writs of Execution and Garnishment (Dkt. 22) (the "Application") filed by BUA International Limited ("BUA") and NOM (UK) Ltd ("NOM") (together "Petitioners"). Respondent Domtec International LLC ("Domtec") opposes both the Motion and the Application. Dkts. 21, 29.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion and the Application without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, both the Motion and the Application are DENIED.

MEMORANDUM DECISION AND ORDER – 1

## II. BACKGROUND

On May 12, 2014, Domtec—an Idaho limited liability corporation—and NOM—an England limited liability company—entered into a written supply agreement (the "Supply Agreement"). Dkt. 1, at 3. Under the Supply Agreement, the parties were to arbitrate any dispute that could not be timely resolved through mediation before an arbitrator in the British Virgin Islands. Dkt. 1-4, at 3. When such a dispute arose in 2022, arbitration proceedings were properly initiated by Domtec against the Petitioners. Dkt. 15-3, at 5. At the outset of the proceedings, the parties agreed to adopt the 2016 British Virgin Island International Arbitration Centre Rules (the "BVI IAC Rules"). *Id.* At the end of the proceedings, the arbitrator entered an award in Petitioners' favor. Dkt. 1, at 4.[1] The arbitrator also stated that Domtec, as the unsuccessful party, should pay Petitioners' costs of arbitration. Dkt. 15-3, at 3.

After prevailing in the arbitration, Petitioners requested that the Court confirm the arbitrator's award and enter a final judgment thereon. Dkts. 1, 8. The Court did so. Dkts. 12–13. Shortly thereafter, Petitioners filed the Motion, arguing that Domtec should be required to pay the fees and costs associated with Petitioners' work related to the confirmation process. Dkt. 15. Two months later, having yet to receive payment of the arbitration award, Petitioners applied for writs of execution and garnishment to force Domtec to pay its debt. Dkt. 22. Domtec timely opposed both the Motion and the

---

[1] The award consisted of payment of £343,750.91 plus interest at the rate of 2% over the Bank of England Bank Rate from the date of the award until payment, and $42,560.00 plus interest at the rate of 2% over the US Federal Reserve Interest rate from the date of the award until payment. Dkt. 1, at 4.

MEMORANDUM DECISION AND ORDER – 2

Application.

### III. LEGAL STANDARD

Here, the Court will set forth the two relevant legal standards in turn.

**A. Attorney's Fees and Costs**

Under Federal Rule of Civil Procedure 54(d)(2)(B)(ii), a motion for attorney's fees must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award[.]" The parties do not dispute that their arbitration proceedings were governed by the BVI IAC Rules nor that the arbitrator stated that Domtec should pay the costs of the arbitration. Under the BVI IAC Rules, an award of costs includes "[t]he legal and other costs incurred by the parties in relation to the arbitration to the extent that the arbitral tribunal determines that the amount of such costs is reasonable[.]" BVI IAC R. Art. 40(e).

**B. Writs of Execution and Garnishment**

"Without jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (cleaned up). In outlining the contours of the federal judicial power, the Supreme Court has "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments— including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Id.*

Under Federal Rule of Civil Procedure 69, "the procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the

procedure of the state where the court is located," unless a federal statute is otherwise applicable. Here, no federal statute governs. Thus, Idaho's procedure controls.

Under Idaho law, a writ of execution is a "formal process issued by a court generally evidencing the debt of the defendant to the plaintiff and commanding the officer to take the property of the defendant in satisfaction of the debt. *City of Idaho Falls v. Beco Constr. Co., Inc.*, 850 P.2d 165, 175 (Idaho 1993). "Essentially, a writ of execution is the process whereby the Court can enforce its judgments by ordering seizure of an asset from the judgment debtor or other appropriate specific performance in order to satisfy the judgment." *Mendoza v. Collection Bureau, Inc.*, 2017 WL 690182 (D. Idaho Feb. 21, 2017).

In a similar vein, a writ of garnishment is a court order to a third party "who is indebted to, or is in possession of, property, money or credits of the debtor," requiring the third party "to turn over to the creditor any of the debtor's property, money or credits held by that third party." Idaho Code § 11-701(6). In sum, a writ of execution orders seizure of the debtor's property directly from the debtor while a writ of garnishment orders seizure of the debtor's property from a third party.

## IV. ANALYSIS

The Court will begin with an analysis of Petitioners' request for fees and costs. It will then move to the application for writs.

### A. Attorney's Fees and Costs

Petitioners argue that the arbitrator's award of the "costs of the arbitration" necessarily includes the fees and costs associated with obtaining a judicial confirmation of

MEMORANDUM DECISION AND ORDER – 4

the arbitral award. *See generally* Dkts. 15, 24. Domtec counters that the language of Article 40(e) limits awards to those granted by the arbitral tribunal. Dkt. 21, at 2–4. Because fees and costs from the confirmation proceedings were incurred after the arbitration had closed and the arbitral tribunal had disbanded, Domtec contends that the requested fees and costs cannot now be awarded. The Court agrees with Domtec.

Per Petitioners, the arbitration confirmation process is best understood as a component part of the arbitration process as a whole. Dkt. 24, at 3–4. Thus, the costs associated with confirmation should be included under the umbrella of the arbitrator's order that Domtec pay the costs of the arbitration. *Id.* at 4. This interpretation is not unreasonable; however, it does not comport with the language of BVI IAC Article 40. Article 40 allows for fee-and-cost shifting, but only to the extent that the arbitral tribunal finds "that the amount of such costs is reasonable[.]" BVI IAC Rs. Art. 40(e). This language makes clear that, before an award can be granted, it must first be approved or found reasonable by the arbitrator. Where no approval is given, no award will be granted.

Here, the arbitrator stated that Domtec would be liable to pay Petitioners' costs of arbitration. Dkt. 15-3, at 3. He then proceeded to make very specific findings regarding the reasonableness of the costs imposed. *See generally* Dkt. 15-3. Notably, his findings include no mention of future costs or costs related to the confirmation of Petitioners' award. *Id.* Without such a finding, the Court cannot hold that the BVI IAC Rules allow for an award to be given.

In support of their request, Petitioners cite to *Kemner v. Dist. Council of Painting & Allied Trades No. 36*, 768 F.2d 1115 (9th Cir. 1985). Dkt. 24, at 3. There, the Ninth Circuit

MEMORANDUM DECISION AND ORDER – 5

awarded fees and costs to a party who sought to enforce an arbitral award. *Id.* at 1120. However, in the underlying contract in *Kemner*, the parties expressly agreed that "in any order to enforce . . . an award [under the contract] . . . the court shall add the payment of reasonable attorneys' fees, costs of court and interest from the date of the award." *Id.* Here, there is no analogous clause in the Supply Agreement or in the BVI IAC Rules on which Petitioners can support their request.

In sum, because there are no grounds entitling Petitioners to an award of fees and costs, the Court DENIES Petitioners' Motion. Having denied the Motion on this basis, the Court finds it unnecessary to address the parties' arguments regarding the reasonableness of Petitioners' requested fees.

### B. Writs of Execution and Garnishment

On October 11, 2023, the Court entered a judgment, confirming the award granted by the arbitrator to Petitioners. Dkt. 13. The judgment mirrors the language of the arbitral award, ordering Domtec to pay Petitioners: 1) £343,750.91 plus interest on that sum, compounded monthly at the rate of two percent over the Bank of England Bank Rate from time to time until payment, and 2) $42,560.00 plus interest on that sum, compounded monthly at the rate of two percent over the U.S. Federal Reserve Interest Rate from time to time until payment. *Id.* In the four-plus months since the Court issued that judgment, Domtec has failed to pay even a portion of the required amount. Now, in its opposition to Petitioners' request for writs, Domtec raises for the first time several shaky excuses for its dormancy. The Court will address them briefly before discussing the necessity of issuing writs.

Domtec's primary excuse for its inaction is that the language of the award is too vague and ambiguous for Domtec to calculate precisely how much it owes Petitioners. *See* Dkt. 29, at 4–5. Because the interest rates of the Bank of England and the U.S. Federal Reserve regularly vary, Domtec asserts that it is unable to determine how much interest has accrued on the judgment. *Id.* at 3–4. It contends that the variable nature of exchange rates further hampers its ability to fulfil its obligations. *Id.* at 3.

As an initial matter, the sums of £343,750.91 and $42,560.00 are certainly not ambiguous. If Domtec is as interested in paying its debt as it claims to be (*see Id.* at 5), payment of those sums would be a good place to start. Petitioners have also made clear that consulting exchange rates is unnecessary because they will accept payment in Great British Pounds. Dkt. 30, at 9.

As for the interest rates, a plain reading of the award indicates that Domtec's interest-owed has fluctuated with the interest rates of the Bank of England and the U.S. Federal Reserve, beginning on November 10, 2022—the date of the arbitral award—and continuing to the present, compounding monthly. As rates have increased and decreased, interest rates on the award have done likewise. The historical interest rates of both benchmark institutions are publicly available, meaning the calculation of Domtec's debt will require little more than a computer, a calculator, and some time.[2] With Petitioners, the Court acknowledges that making the necessary calculations may be labor intensive, but it

---

[2] A cursory consultation of the history of these rates indicates that neither has changed more than seven times since the issuance of the arbitral award. *See* Federal Funds Rate – 62 Year Historical Chart, https://perma.cc/5UBT-LLL6; Official Bank Rate history, https://perma.cc/LR7N-AKVC.

MEMORANDUM DECISION AND ORDER – 7

will certainly not be impossible and there is certainly no benefit to be gained from continued foot-dragging.

Domtec complains that the Court has ignored its request for assistance in making its calculations. *Id.* at 2. Not so. Domtec's statement most resembling such a request comes from its Answer to Petitioners' Petition for Confirmation (Dkt. 6) in which Domtec claimed that the factual summary of events contained in the arbitral award was "incomplete" and "unsupported." Dkt. 6, at 3. Nowhere in the Answer does Domtec express apprehensions about the language of the award. Nowhere does it ask the Court to help resolve those apprehensions. To claim now that the Court should have understood Domtec's statements to be a request for clarification of the award is perplexing and unreasonable.

Further, Domtec laments the fact that Petitioners have declined to lend any aid in making the proper calculations. Dkt. 29, at 5. While the provision of such aid would certainly be a kind gesture from Petitioners, at the end of the day, the responsibility for calculation and payment rests with Domtec—not BUA, not NOM, and not the Court.

Because Domtec has yet to satisfy a judgment entered by the Court, the Court could justifiably issue writs of execution and garnishment on Domtec's assets. However, before taking such a drastic step, the Court will, in its discretion, allow Domtec one, final opportunity to fulfill its obligations independently.[3] Nevertheless, if within twenty-one (21) days from the issuance of this order, Domtec has still not satisfied its obligations, the Court

---

[3] Writs of execution and garnishment are often complicated. They incur additional time, expense, and manpower. The Court typically employs such writs in cases where a party is pro se or has failed to appear. Here, Domtec is represented by counsel and understands its obligations to the Court. Accordingly, the Court sees little reason to undertake a process that will add additional steps when the problem can be easily remedied.

MEMORANDUM DECISION AND ORDER – 8

will, upon notice from Petitioners, issue writs of execution and/or garnishment.

### C. Correction of Docket Entry Order

It has come to the attention of the Court that in its Docket Entry Order dated December 21, 2023 (Dkt. 23), it classified the property under the heading "Domtec International, LLC Registered Vehicles" as "real property." *Id.* This was a mistake. Instead, the Docket Entry Order should read: "Good cause appearing, the Court orders that ***no property, personal or otherwise***, listed under the heading 'Domtec International LLC Registered Vehicles' in Petitioner BUA's Emergency Motion and Application for Writs of Execution and Garnishment (Dkt. 23) shall be sold or otherwise alienated without prior approval by the Court." The rest of the Docket Entry Order remains in effect as written. The Docket Entry Order shall be amended to reflect this correction.

## V. CONCLUSION

First, there are no grounds entitling Petitioners to an award of fees and costs for its efforts in this Court. Therefore, the Court DENIES Petitioners' Motion.

Next, the Court finds Domtec's justifications for failing to fulfill its obligations to Petitioners uncompelling. However, before issuing writs of execution and/or garnishment, the Court will allow Domtec a final opportunity to comply with the Court's Order and Judgment (Dkts. 12, 13). Failure to comply will, upon notice from Petitioners, result in issuance of the requested writs. But, for the time being, the Court DENIES Petitioners' Application.

Finally, the Court AMENDS its prior Docket Entry Order (Dkt. 23) to better reflect its intent.

## VI. ORDER

IT IS HEREBY ORDERED:

1. Petitioners' Motion for Attorney's Fees and Costs (Dkt. 15) is **DENIED**.

2. Petitioners' Application for Writs of Execution and Garnishment (Dkt. 22) is **DENIED**.

    a. If, within twenty-one (21) days of the issuance of this Order, Domtec has not satisfied its obligations to Petitioners, the Court will, upon notice from Petitioners, issue writs of execution and/or garnishment on Domtec's assets.

3. The Docket Entry Order at Dkt. 23 shall be amended consistent with Section IV(C) of this Order.

DATED: April 1, 2024

_____
David C. Nye
Chief U.S. District Court Judge